## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

Nathaniel Hallman,      ) Cr. No. 3:05-376
           )
     Movant,   )
           )
  vs.        )  **ORDER AND OPINION**
           )
United States of America,    )
           )
     Respondent.  )
_____)

   Movant Nathaniel Hallman seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

   On December 19, 2011, May 11, 2012, and August 17, 2012, prior to filing his § 2255 motion, Movant filed three motions for relief from judgment pursuant to Rule 60(b)(4) of the FEDERAL RULES OF CIVIL PROCEDURE.[1] ECF Nos. 171, 172, & 173. On December 10, 2012, the court issued an order indicating that it would consider the three motions as a motion to vacate under § 2255, and directing the Clerk of Court to provide Movant with the appropriate form to present his claims. ECF No. 174. Movant properly filed his § 2255 motion on January 14, 2013. ECF No. 178. On January 23, 2013, the Government filed a motion for summary judgment. ECF No. 182. On the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court issued an order advising Movant of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. ECF No. 183. On February 13, 2013, Movant filed a response. ECF No. 185. Movant has also filed a motion to appoint counsel, ECF No. 186; motion to proceed in forma pauperis, ECF No. 187; and two motions to amend his § 2255 motion, ECF Nos. 188 &

---

[1] Movant's first Rule 60(b) motion is dated December 14, 2011.

189. Movant's two motions to amend are granted, and the arguments contained in those motions will be considered in the court's review of his motion to vacate.

## I. STATEMENT OF THE CASE

### A. *The Original and Superseding Indictments*

On April 6, 2005, a federal grand jury returned a two-count indictment charging Movant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count One), and possession with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count Two). ECF No. 1. On the same day, United States Magistrate Judge Bristow Marchant issued a warrant for Movant's arrest, ECF No. 3, and on April 20, 2005, Movant was arrested. ECF No. 11 at 2. On September 7, 2005, Movant was released on a secured bond and placed on pretrial supervision, a condition of which was that he not commit any offense in violation of federal, state, or local law while on release. ECF No. 35. On April 6, 2006, officers with the Richland County Sheriff's Department in South Carolina arrested and charged Movant with trafficking ten grams or more of cocaine. ECF No. 55. Movant was released on a secured bond. *Id.* The Government sought a warrant for Movant's arrest and revocation of his pretrial supervision. *Id.* On April 14, 2006, United States Magistrate Judge Joseph R. McCrorey issued a warrant for Movant's arrest. ECF No. 57. Movant was arrested on April 19, 2006. On the same day, Judge McCrorey revoked Movant's pretrial supervision. ECF No. 58. On August 2, 2006, a federal grand jury returned a three-count superseding indictment that, in addition to the two counts charged in the original indictment, charged intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count Three). ECF No. 77.

**B. *Movant's Guilty Plea***

On October 2, 2006, the court held a plea hearing in accordance with Rule 11 of the FEDERAL RULES OF CRIMINAL PROCEDURE. ECF No. 94. At the hearing, Movant pleaded guilty pursuant to a written plea agreement to Counts One and Three of the superseding indictment. ECF Nos. 93 & 94. In paragraph eleven of the plea agreement, the Government and Movant stipulated that Movant had one prior felony drug conviction and that the Government had provided Movant with notice of that conviction in an information filed pursuant to 21 U.S.C. § 851. ECF No. 93 at 7. Further, the Government and Movant agreed that such a conviction would subject him to a ten-year statutory mandatory minimum term of imprisonment. *Id.* The Government agreed in paragraph twelve that at sentencing it would withdraw the § 851 enhancement in exchange for Movant's cooperation, which would reduce the statutory mandatory minimum sentence on Count Three to five years. *Id.* at 8. The Government agreed in paragraph sixteen that, if the court reduced Movant's offense level by two levels under U.S.S.G. § 3E1.1(a), for acceptance of responsibility, the Government would move pursuant to § 3E1.1(b), for an additional one-level decrease. *Id.* at 10.

During the Rule 11 plea colloquy, after the court found Movant competent to plead guilty, Movant affirmed he was aware that he would be waiving certain constitutional rights that he was entitled to as a criminal defendant, ECF No. 128 at 31-32; that he was satisfied with his representation in the matter, *id.* at 15-21; that the Government's summary of the plea agreement was correct, *id.* at 41; that no one had made any additional promises to him in exchange for pleading guilty, *id.* at 42-43; that no one had threatened him or used force against him to procure his guilty plea, *id.* at 43; that he understood by pleading guilty he waived any defenses he might have to the

charges, *id.*; and that he had been provided sufficient time to consider his decision to plead guilty, *id.* at 44. Thereafter, the Government provided the court with a summary of its evidence.

As to Count One, according to the Government's summary, on September 19, 2003, Officer Ed Hines with the Elgin Police Department in Elgin, South Carolina observed a vehicle–"an older model Lincoln"– operating with defective taillights. *Id.* at 44. Officer Hines attempted to have the vehicle pull over to the side of the road. *Id.* The vehicle accelerated and then slowed down but failed to pull over. *Id.* Eventually, the vehicle pulled into a private driveway after leaving the Elgin town limits. *Id.* As soon as the vehicle stopped, two men exited through the passenger's side door. *Id.* Officer Hines spoke with both men, one of whom was later identified as Movant. *Id.* at 44-45. Officer Hines asked Movant why he did not stop sooner. *Id.* Movant indicated that he did not notice the officer's lights or siren. *Id.* Movant subsequently changed his story, explaining instead that he was looking for a safe place to stop. *Id.* Officer Hines' report of the incident indicates that he observed Movant driving the vehicle. *Id.* After speaking with Movant, "Officer Hines approached the driver's side door to determine why [Movant] exited through the passenger's side door." *Id.* Officer Hines opened the door and noticed a loaded .22 caliber pistol located on the driver's side of the vehicle. *Id.* Officer Hines placed Movant under arrest. *Id.* A subsequent criminal record check revealed Movant had multiple convictions with possible sentences of more than one year, and Movant's fingerprints matched those associated with the convictions.[2] *Id.*

---

[2] It appears, based on the Presentence Investigation Report prepared by the United States Probation Office, that Movant, at the time of his September 19, 2003 arrest, was under the supervision of the South Carolina Department of Probation, Parole and Pardon Services, after having served prison sentences on two state convictions for possession of crack cocaine with intent to distribute, and voluntary manslaughter. ECF No. 111 at 6-7.

As to Count Three, on April 6, 2006, officers with the Richland County Sheriff's Department, upon observing "a vehicle leaving a closed business at a high rate of speed," executed a traffic stop. *Id.* at 46. During the stop, one of the officers observed Movant trying to remove something from his shirt pocket. *Id.* When the officer attempted to handcuff Movant, a brief struggle ensued, during which Movant attempted to swallow a clear plastic bag containing a white substance. *Id.* The officers placed Movant under arrest and seized the plastic bag Movant was attempting to swallow, as well as another plastic bag from Movant's shirt pocket. *Id.* at 47. In total, the officers seized 14.73 grams of a substance that subsequent laboratory tests confirmed was crack cocaine. *Id.*

Following the Government's summary of the evidence, the following exchange took place between the court, Movant, and his attorney, an Assistant Federal Public Defender:

> THE COURT: [Counsel], do you agree with the Government's summary of the evidence?
>
> [COUNSEL]: Yes, your Honor.
>
> THE COURT: All right. Mr. Hallman, do you agree with the Government's statements?
>
> DEFENDANT HALLMAN: Yes, your Honor.
>
> THE COURT: Is that what you did? Did you do what the Government said that you did?
>
> DEFENDANT HALLMAN: Yes, your Honor.
>
> THE COURT: Do you have any questions?
>
> DEFENDANT HALLMAN: No, ma'am.

*Id.* at 47-48. Thereafter, Movant signed his plea. *Id.* at 48.

### C. *Sentencing*

On March 29, 2007, the court sentenced Movant. ECF No. 109. On Count One, Movant faced a maximum term of imprisonment of ten years. *See* 18 U.S.C. 924(a)(2). On Count Three, Movant faced a mandatory minimum term of imprisonment of five years and a maximum term of imprisonment of forty years. *See* 21 U.S.C. § 841(b)(1)(B). In applying the Sentencing Guidelines, the court sentenced Movant as a "Career Offender" pursuant to U.S.S.G. § 4B1.1, based on his prior convictions in South Carolina state court for possession of crack cocaine with intent to distribute, and voluntary manslaughter.[3] ECF No. 111 at 6-7. In exchange for Movant's cooperation, the Government withdrew its § 851 enhancement based on Movant's prior felony drug conviction, thereby reducing his guideline range from 262-327 months imprisonment to 188-235 months imprisonment.[4] ECF Nos. 111 & 113. The court sentenced Movant to a term of imprisonment of 188 months, which consisted of 120 months as to Count One and 188 months as to Count Three, such terms to run concurrently. ECF No. 112. Judgment was entered on April 3, 2007. ECF No. 112. Movant did not file an appeal. On May 5, 2011, the court, pursuant to the Government's Rule 35(b) motion, reduced Movant's sentence to a term of imprisonment of 151 months, which consisted of 120 months as to Count One and 151 months as to Count Three, such terms to run concurrently. ECF No. 169.

---

[3] Movant also had on his criminal record at the time of sentencing a conviction for third degree burglary, but that conviction occurred subsequent to the commission of his first federal offense, and thus did not affect his career offender status. ECF No. 111 at 7.

[4] Movant's total offense level was 31, which included a three-level downward departure pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility. ECF No. 111 at 8. His criminal history category was VI. *Id.* at 12.

**D.** *New Evidence*

On January 14, 2013, Movant formally filed his § 2255 motion, which had attached new evidence in the form of an affidavit signed by Movant's mother, Janice Hallman, dated March 4, 2008. ECF No. 178-2. The affidavit reads:

> My name is Ms. Janice Hallman, and I'm giving this statement of my own free will pertaining to a pistol charge that my son Mr. Nathaniel Hallman was charge [sic] with in 2003. When my son was locked up in Kershaw County Detention Center, I gave Mr. Michael (Mike) Hammock a pistol that belong [sic] to my boyfriend. I wanted to get the gun out of the house due to my grandkids. Initially I didn't know it was in the house until I started going through my boyfriend's belongings, nor at anytime did my son know that their [sic] was a gun in the house, nor did he know that I gave the gun to Mr. Michael (Mike) Hammock.

*Id.*

Movant has also submitted an audio cassette tape recording of a parole revocation hearing held on October 29, 2003, before the South Carolina Department of Probation, Parole and Pardon Services.[5] The parole revocation hearing resulted, in part, from Movant's September 19, 2003 arrest by the Elgin Police Department. ECF No. 179. At the hearing, Movant asserted that the firearm seized from the vehicle was not his and that he had no knowledge that the firearm was in the vehicle. *Id.* Movant explained:

> The car was sitting in the woods and it was getting restored. And you know the friend of the family, he had left the gun in the car. He got the gun from my mother. The gun come from my stepfather who passed away. And I had no knowledge of the gun or the weapon even being in the car. I had no knowledge of my mom having a weapon in the house.

*Id.* Mike Hammock, a friend of Movant's family, made the following statement at the hearing:

---

[5] The court does not have an official transcript of the hearing. The transcription above was made from the audio cassette tape submitted by Movant.

I am a surveyor and [Mr. Hallman] has been helping me out surveying, and we started to restore some cars, and it was way back behind the house. It was in the woods. It was all grown up. I had been down there several times trying to get it jacked up, getting wheels, brakes on it, a '66 Lincoln. And I had seen wild dogs down there. . . snakes. And I kept complaining about it several times, and Ms. Hallman said that she had an old pistol that she had from somewhere. And I said well do you mind if I take it down there with me. And I took it down there, and it sat there for a couple days, and I did put it under the seat. The car had no business really on the road, even though it was [unintelligible]. It still needed better brakes done to it and everything. And we just took off one evening, and the gun was under the seat, and I put it there.

*Id.* Neither Movant's nor Hammock's statements appear to have been made under oath.

## II. DISCUSSION

### A. *Section 2255 Motion*

Movant asserts the following four grounds for relief: 1) the indictment was invalid because it does not contain the handwritten signature of the foreperson; 2) the court lacked subject-matter jurisdiction because the Government "failed to file an indictment within the 30 day limit required by law"; 3) Movant's prior convictions did not support his classification as a career offender for sentencing purposes;[6] and 4) counsel was ineffective for failing to move for a suppression hearing. The Government contends that Movant's § 2255 motion is time-barred.

### 1. *Legal Standard*

#### a. *Motions to Vacate Generally*

A federal prisoner in custody may challenge the fact or length of his detention by filing a motion pursuant to 28 U.S.C. § 2255. To receive relief under 28 U.S.C. § 2255, a movant is required

---

[6] In his § 2255 motion, Movant contends that the court incorrectly sentenced him as an "armed career criminal" pursuant to 18 U.S.C. § 924(e). However, Movant was not sentenced as an armed career criminal. The court will nevertheless construe Movant's claim liberally and treat it as challenging the court's decision to sentence him as a career offender under U.S.S.G. § 4B1.1.

to prove by a preponderance of the evidence that his sentence was imposed in violation of the Constitution or laws of the United States; or that the court was without jurisdiction to impose such sentence; or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If this showing is made, the court must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial to correct the sentence as may appear appropriate." § 2255(b). If, on the other hand, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court may summarily deny the petition without holding a hearing. Rule 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS; *see also* § 2255(b) (a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief). Generally, when a movant attacks his sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. *See United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)); *United States v. Maybeck*, 23 F.3d 888, 891–92 (4th Cir. 1994). However, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

b. *Statute of Limitations*

A movant must file a § 2255 motion one year from the latest of: 1) the date on which a judgment of conviction becomes final; 2) the date on which an impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is

removed, if the defendant was prevented from making a motion by such governmental action; 3) the date on which a right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or 4) the date on which the facts supporting the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). A judgment of conviction becomes final when the time for seeking review expires. *Clay v. United States*, 537 U.S. 522, 525 (2003).

**2. *Analysis***

    a. *Statute of Limitations*

Movant did not file a direct appeal, so the judgment became final on April 13, 2007, ten days after it was entered. *See* Fed. R. App. P. 4(b)(1)(A)(1), (6) (then providing ten days for the filing of a notice of appeal in the district court). Although Movant did not formally file his § 2255 motion until January 14, 2013, the court ruled in its December 10, 2012 order that it would consider Movant's three "Rule 60(b)" motions as a motion to vacate. As such, the court finds that December 14, 2011, the date of Movant's first Rule 60(b) motion,[7] is the relevant date for determining whether his § 2255 motion is timely. Nevertheless, Movant's December 14, 2011 filing was not within one year of the date on which his judgment of conviction became final. *See* § 2255(f)(1).

In addition, Movant is unable to demonstrate that one of the other dates listed under § 2255(f) occurred within one year of his December 14, 2011 filing. There is no evidence that Movant was prevented from filing a § 2255 motion because of any governmental interference. *See* § 2255(f)(2).

---

[7] A prisoner's submission to the court is considered filed when it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Movant's first Rule 60(b) motion was dated December 14, 2011. Construing the facts in the light most favorable to Movant, the court finds that on that date he delivered the motion to prison authorities.

Movant also has not cited a Supreme Court decision recognizing a new right that renders his motion timely. *See* § 2255(f)(3). With respect to Movant's claim that his prior convictions were not valid predicate offenses for his career offender classification, Movant cites *Begay v. United States*, 553 U.S.137 (2008) (decided April 16, 2008), and *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010) (decided June 14, 2010),[8] as two Supreme Court decisions recognizing new rights that support his request for habeas relief.[9] However, Movant did not file his § 2255 motion until December 14, 2011, beyond one year of the date of either decision. Finally, Movant has not cited in support of his claims new facts that only became discoverable within the year prior to the filing of his motion to vacate. *See* § 2255(f)(4).

Thus, Movant's § 2255 motion was not filed within the one-year statute of limitations and is time-barred.

b. *"Actual Innocence" Exception to the One-Year Statute of Limitations*

Movant contends that the court may review his untimely motion to vacate because he is actually innocent of the offense of felon in possession of a firearm and the status of career offender under U.S.S.G. § 4B1.1.

---

[8] The Fourth Circuit recently held that the Supreme Court's decision in *Carachuri–Rosendo* does not apply retroactively to cases on collateral review. *United States v. Powell*, 691 F.3d 554 (4th Cir. 2012). The Fourth Circuit has not decided whether *Begay* applies retroactively, and the court here does not need to address the issue.

[8] Movant also cites *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which the Supreme Court decided on June 17, 2013. The Court held that any fact that increases the mandatory minimum sentence, other than the fact of a prior conviction, enhances the penalty for a crime, and therefore must be submitted to the jury. *Alleyne* is inapposite as the court's determination that Count Three carried a mandatory minimum sentence was based only on the facts to which Movant pleaded.

In *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), the Supreme Court recently ruled that a "convincing showing" of actual innocence under the standard set forth in *Schlup v. Delo*, 513 U.S. 298 (1995), provides a "gateway" to federal habeas review of cases filed outside the one-year statute of limitations. In *Schlup*, the Supreme Court held that a claim of actual innocence "requires [a movant] to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." 513 U.S. at 324. Also, "[a movant] must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. "[I]n making an assessment of the kind *Schlup* envisioned, 'the timing of the [motion]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Perkins*, 133 S. Ct. at 1928 (citing *Schlup*, 513 U.S. at 332). In addition, a movant must establish factual innocence of the crime, and not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). The Supreme Court has emphasized that the exception is limited to "certain exceptional cases involving a compelling claim of actual innocence." *House v. Bell*, 547 U.S. 518, 521(2006); *see also Schlup*, 513 U.S. at 324 (noting that "experience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare").

The court evaluates Movant's claim of actual innocence under the standard set forth in *Schlup*, cognizant of the Supreme Court's admonition that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). "In addition to emphasizing the sheer volume of guilty pleas, the Supreme Court has located independent value in the fact that such a plea 'usually rest[s] . . . on a defendant's profession of guilt in open court[.]' " *United States v. Fugit*, 703 F.3d

248, 253 (4th Cir. 2012) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82–83 (2004)).

Moreover, "[t]he advantages of plea bargains [to all concerned] 'can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality.' " *United States v. Lemaster*, 403 F.3d 216, 219–20 (4th Cir. 2005) (quoting *Blackledge v. Allison*, 431 U.S. 63, 71 (1977)). As such, a defendant's statements during a plea colloquy "carry a strong presumption of verity" that poses "a formidable barrier in any subsequent collateral proceedings." *Id.* (quoting *Blackledge*, 431 U.S. at 74). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22.[10]

    i. *Felon in Possession of a Firearm*

To establish a violation of 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt: 1) that the defendant was a convicted felon at the time of the offense; 2) that he voluntarily and intentionally possessed a firearm; and 3) that the firearm traveled in interstate commerce at some point. *United States v. Gallimore*, 247 F.3d 134, 136-37 (4th Cir. 2001) (quoting *United States v. Hobbs*, 136 F.3d 384, 390 (4th Cir. 1998)); *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995). "[Section] 922(g)(1) does not require proof of actual or exclusive possession;

---

[10] In addition, in order for a movant to take advantage of the actual innocence exception, he must be able to demonstrate that he is actually innocent of the crimes for which he was convicted, as well as any other "more serious charges" that the Government dropped in the course of plea bargaining. *See Bousley v. United States*, 523 U.S. 614, 624 (1998). Count Two, the offense of possession with intent to distribute a quantity of marijuana, when enhanced due to a prior conviction for a felony drug offense, carries no mandatory minimum sentence and a maximum sentence of ten years, the same statutory sentencing range as the offense of being a felon in possession of a firearm. *Compare* 21 U.S.C. § 841(a)(1), (b)(1)(D), *with* 18 U.S.C. §§ 922(g)(1), 924(a)(2). Therefore, Count Two, which the Government dropped in the course of plea bargaining, is not a more serious charge.

constructive or joint possession is sufficient." *Gallimore*, 247 F.3d at 136-37.  The Government can prove constructive possession of an item in situations where a defendant had dominion and control over the premises or vehicle where the item is located.  *See United States v. Scott*, 424 F.3d 431, 435-36 (4th Cir. 2005) (citing *United States v. Shorter*, 328 F.3d 167 (4th Cir. 2003)).  Whether constructive or actual, the possession must be intentional.  *See United States v. Scott*, 424 F.3d 431, 435 (4th Cir. 2005).

Movant supports his claim of actual innocence with evidence that he lacked knowledge that the firearm seized during the September 19, 2003 traffic stop was in the vehicle, and that he was not the owner of the firearm.  Movant's statement during the October 29, 2003 parole revocation hearing is exculpatory, but the court affords his self-serving statement, contradictory to his subsequent guilty plea, little weight.  The statement of Movant's family friend, Mike Hammock, deserves more attention.  Mr. Hammock's remarks corroborate Movant's, indicating explicitly that he (Hammock) placed the firearm in the vehicle, and implicitly that Movant lacked knowledge of the firearm's existence or that it was located in the vehicle on September 19, 2003.  The reliability of Hammock's account is nevertheless undermined by the affidavit of Janice Hallman, Movant's mother.  The affidavit indicates that Ms. Hallman gave Mr. Hammock the firearm while her son was "locked up in Kershaw County Detention Center," so as to ensure that her grandchildren would not have access to it.  Yet Mr. Hammock stated that he received the firearm a couple days before Movant's arrest, during a time period when Movant was working with him to restore the " '66 Lincoln" involved in the traffic stop.

Moreover, Movant's decision to plead guilty casts doubt on the reliability of all of these statements.  This is not a case in which new exculpatory evidence has emerged following a

14

conviction. To the contrary, at the time of Movant's guilty plea, two persons were available to provide allegedly exculpatory accounts of how a loaded .22 caliber pistol ended up in the vehicle in which Movant was riding, but Movant elected to admit his guilt under oath. Movant's delayed reliance on Mr. Hammock's and his mother's accounts weakens his claim of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 332 (1995).

The evidence Movant proffers is insufficient to overcome the strong presumption of verity that the court must afford his acceptance in open court of the Government's summary of the evidence, and his plea of guilty to the offense of being a felon in possession of a firearm. The reliability of Movant's guilty plea is underscored by the fact that he offers no evidence he was not competent to plead guilty, or that his guilty plea was involuntary or unintelligently made. In that regard, Movant cites no "extraordinary circumstance[ ]" that might lead the court to doubt the truth of his statements in open court. *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005).

Accordingly, the court finds that Movant's claim of actual innocence with respect to Count Three is without merit.

ii. *Career Offender*

Movant contends that he is actually innocent of being a career offender because his prior conviction in state court for voluntary manslaughter does not qualify as a "crime of violence" for the purposes of U.S.S.G § 4B1.1. In the context of § 4B1.1, a claim of actual innocence exists only to overcome procedural default "where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes." *United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010) (citing *United States v. Maybeck*, 23 F.3d 888, 892-94 (4th Cir. 1994)). Movant's claim of actual innocence of being a career offender is without merit

because he does not contend that he did not commit the predicate offense of voluntary manslaughter, only that the offense should not be classified as a crime of violence.

Because Movant's claim of actual innocence fails, both with respect to his status as a career offender and conviction for the offense of felon in possession of a firearm, he cannot avail himself of the *Perkins* exception to § 2255's statute of limitations.

c. *The Merits of Movant's § 2255 Motion*

Even if Movant's § 2255 motion was not time-barred, he is not entitled to habeas relief on the merits of his claims.

I. *Whether the Superseding Indictment Was Invalid*

Movant contends that the superseding indictment was invalid because it was not signed by the grand jury foreperson. Had he been aware of that defect, Movant claims he would not have pleaded guilty. Specifically, Movant points out that the superseding indictment docketed at ECF No. 77 is signed "s/ Foreperson." Although that is true, the *sealed* copy of the superseding indictment, ECF No. 76, does contain the grand jury foreperson's signature. The public copy of the indictment contains the placeholder, "s/ Foreperson," in order to protect the grand jury foreperson's identity and the secrecy of the grand jury proceeding. Therefore, Movant's assertion that he would not have pleaded guilty had he know the indictment was "void" is based on a false premise. This ground for relief is without merit.

ii. *Whether the Court Lacked Subject-Matter Jurisdiction Because the Government Violated the Speedy Trial Act*

Movant claims that the Government's filing of a superseding indictment more than thirty days after his arrest for violating the conditions of his pretrial supervision violated the Speedy Trial Act (the "STA") and, therefore, deprived the court of its subject-matter jurisdiction.

A valid guilty plea waives all non-jurisdictional defects in the proceedings prior to the guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010); *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993). The right to a speedy trial under the STA, the constraints of which may be waived, is non-jurisdictional. *United States v. Moreno-Serafin*, 251 F. App'x 185 (4th Cir. 2007) (citing cases). Thus, by knowingly and voluntarily pleading guilty, Movant waived his right to claim a violation of the STA.

Moreover, the proceedings in this case did not run afoul of the STA. Under the STA, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons . . . ." 18 U.S.C. § 3161(b). If no indictment is filed within this thirty-day deadline, then "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). The Fourth Circuit has held that the STA is not triggered unless formal charges have been filed in connection with an arrest. *United States v. Thomas*, 55 F.3d 144 (4th Cir. 1995) (citing *United States v. Summers*, 894 F.2d 90 (4th Cir. 1990)); *United States v. Lee*, 818 F.2d 302, 305 (4th Cir. 1987) (holding that, in order to trigger the thirty-day limit under § 3161(b), "both a federal complaint and a federal arrest and/or federal summons are required").

Movant's arrest did not trigger the thirty-day deadline for filing an indictment, as his arrest was not incident to a criminal complaint pursuant to Rule 4 of the FEDERAL RULES OF CRIMINAL PROCEDURE. Instead, Movant was arrested because he violated his pretrial supervision. Although the conduct that led to his arrest eventually became the factual basis for Count Three of the superseding indictment, at the time of the arrest that conduct was uncharged. Therefore, Movant's claim that the superseding indictment was untimely is without merit.

iii. *Whether Movant's Prior Convictions Supported His Classification as a Career Offender*

Movant's claim that the court improperly sentenced him as a career offender under the Sentencing Guidelines does not state a claim for habeas relief under § 2255. The Fourth Circuit has held that except in extraordinary circumstances, "an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." *United States v. Pregent*, 190 F.3d 279, 283–84 (4th Cir. 1999) (explaining that § 2255 provides relief only for cases in which the sentence exceeded the maximum authorized by law). "Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines." *Id.* at 284. In any event, the court finds no error in its decision to use Movant's prior conviction for voluntary manslaughter as a predicate crime of violence under the career offender guideline.[11]

---

[11] The commentary to U.S.S.G. § 4B1.2, which defines the term "crime of violence" as it is used in the career offender guideline, expressly refers to "manslaughter" as such a crime.

18

iv. *Ineffective Assistance of Counsel*

Movant contends that his counsel was constitutionally ineffective because he failed to file a motion to suppress evidence of the firearm seized during the September 19, 2003 traffic stop. As noted hereinabove, Count One of the indictment was based on Movant's possession of the firearm.

As previously stated, a voluntary and intelligent guilty plea constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to a plea of guilty, including claims relating to alleged constitutional deprivations. *United States v. Partlow*, 301 F. App'x 297 (4th Cir. 2008) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). However, "a guilty plea does not bar collateral review of allegations of ineffective assistance of counsel insofar as the alleged ineffectiveness bears on the voluntariness of the guilty plea." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992). To the extent Movant claims counsel's conduct prior to entry of his guilty plea influenced the voluntary and intelligent nature of his plea, the court will consider Movant's claim of ineffective assistance of counsel. *See id.* at 1297 n.17.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court adopted a two-prong test to determine whether a criminal defendant received ineffective assistance of counsel. A defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-91. In the context of a guilty plea, the "performance" prong of the *Strickland* test is the same. However, to establish the "prejudice" prong, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "[A] court need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Assuming for purposes of summary judgment that Movant would have gone to trial and found guilty only on Count Three, Movant would have been subject to a guideline range of 262-327 months incarceration for Count Three. Even if the government had agreed to withdraw the § 851 enhancement after trial and not in exchange for Movant's entering the plea agreement, Movant's guideline range would equal 188-235 months incarceration, the identical range under which he was sentenced. The court finds that the alleged ineffective assistance of counsel did not prejudice Movant. Movant's claim is without merit.

**B.** *Motion to Appoint Counsel*

It is within the court's discretion to appoint counsel if it deems it to be "in the interest of justice." 18 U.S.C. § 3006A(2)(b). Rule 89(c) of the RULES GOVERNING § 2255 PROCEEDINGS provides that a court must appoint counsel in a habeas proceeding only "[i]f an evidentiary hearing is required." The interests of justice do not require the appointment of counsel, and an evidentiary hearing is not required to resolve Movant's § 2255 motion. Accordingly, Movant's motion to appoint counsel is denied.

### III. CONCLUSION

For those reasons, Movant's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 178, is **DENIED**. The Government's motion for summary judgment, ECF No. 182, is **GRANTED**. In treating Movant's three "Rule 60(b)" motions, ECF Nos. 171, 172, & 173, as part of a motion to vacate, those three motions are **DENIED** as moot. Movant's motions

to amend, ECF Nos.188 & 189, are **GRANTED**.  Movant's motion to appoint counsel, ECF No. 186, is **DENIED**.  Movant's motion to proceed in forma pauperis, ECF No. 187, is **DENIED** as moot.

## <u>CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001).  The court concludes that Movant has not made the requisite showing.  Accordingly, the court **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

August 29, 2013

## NOTICE OF RIGHT TO APPEAL

**Movant is hereby notified of the right to appeal this order
pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**